# SUPREME COURT.

IN THE MATTER OF THE ADMISSION OF THE GRADUATES OF
THE LAW DEPARTMENT OF THE UNIVERSITY OF THE CITY
OF NEW YORK, TO PRACTICE AS ATTORNEYS AND COUN-
SELLORS OF THIS COURT.

The provision of the act entitled "An act with reference to the University
of the city of New York," passed April 6, 1860, which provides that "any
graduate of the law department *shall be admitted* to practice as attorney and
counsellor at law, in all the courts of the state," upon certain prescribed exami-
nation and recommendation of the faculty of law of the University, was passed
without authority or power, and in violation of the constitution.

It was the evident intention of the framers of the constitution (*Art.* 7, § 8,) to
leave or vest in this court the right of appointing its own attorneys and coun-
sellors, and the right of ascertaining and passing upon the requisite qualifications
of applicants, by and through its own committee of examination.

*New York, General Term, May,* 1860.
*Present,* SUTHERLAND, MULLIN and LEONARD, *Justices.*

By the court—SUTHERLAND, Justice. A motion is made
in behalf of twenty-two young gentlemen, graduates of the
law department of the University of the city of New York,
for their admission to practice as attorneys and counsellors
of this court, under a recent act of the legislature of this
state. (*Chap.* 187, *passed April* 6, 1860.)

The act is entitled "An act with reference to the Uni-
versity of the city of New York."

The first section of the act is as follows: "The faculty
of law of the University of the city of New York, are
hereby constituted a committee, upon whose examination
and recommendation, as evinced by the degree of bachelor
of laws, conferred upon their recommendation by the
council of the University, any graduate of the law depart-
ment shall be admitted to practice as attorney and coun-
sellor at law in all the courts of the state; but no diploma
shall be sufficient for such admission, which shall be given

for a period of attendance upon said law department less than three terms of twelve weeks each, or than two terms of twelve weeks each, with one year's study of the law elsewhere."

This motion is made on the certificates of the individuals composing the faculty of law of the said University, certifying that these twenty-two young gentlemen "have attended the law department of the said University for two terms of twelve weeks each, and have pursued the study of law one year elsewhere;" and further certifying, that upon their recommendation, after a thorough and critical examination by them, the council of the University had conferred upon these young gentlemen the degree of bachelor of laws.

We are inclined to think, that the diplomas themselves should have been produced, as the best evidence of their having been conferred on the applicants; but as the certificate leaves no room for doubt, that the diplomas have been conferred on the applicants in accordance with the act, we should at once direct an order for their admission to be entered on the production of their diplomas, and filing the certificate, if there were not other and more serious objections to their admission under this act.

After a careful examination of the question, we think the legislature had no constitutional right or power to pass the act; and thus take away from this court the right and power which it has heretofore exercised, of ascertaining and determining for itself and under its own rules and regulations, whether the applicants are of the class or description of persons, by the constitution entitled to admission, and have the requisite constitutional qualifications, of learning, and ability, and moral character.

By section 8, of article 6, of the constitution, " any male citizen of the age of twenty-one years, of good moral character, and who possesses the requisite qualifications of learning and ability, shall be entitled to admission to practice in all the courts of this state."

We think the act in question conflicts with this provision of the constitution in more than one respect.

1. The constitution in effect declares, that the applicant to be entitled to admission must be a male citizen, and of the age of twenty-one years.

The act in effect declares, that any graduate of the law department of the University, irrespective of sex, age or citizenship, upon whom the diploma has been conferred under the circumstances mentioned in the act, shall be admitted to practice, &c. (See *McKoan* agt. *Devries*, 3 *Barb.*, 196.)

If the act is constitutional and valid, on applications for admission under it, it would appear to leave for the court a ministerial, formal duty only, and which could as well be performed by the clerk or the crier, as by the court.

The act would appear to make the diploma conferred by the council of the University conclusive evidence to the court, not only, that the applicant is possessed of the requisite qualifications of learning, ability, and good moral character, but also that the applicant is of the age of twenty-one years, and a male citizen; thus taking from the court all right of inquiry into any of these circumstances, and all judicial discretion and control as to or over the applicant's admission.

If constitutional, the act is in effect a legislative mandamus to the court *to admit*, on the presentation of the diploma, and satisfactory evidence that it had been given for a period of attendance upon the law department of the University, or of such attendance with one year's study of the law elsewhere, not less than that specified in the act.

This mere ministerial duty, which the act would appear to leave in the court, and which this motion assumes the court should perform in the usual way, by directing an order for the admission of the applicants to be entered, and by granting them the usual diplomas or licenses to practice, would appear to be not only useless, but incon-

sistent—useless, because, if the diploma of the council of the University is, or should be, sufficient evidence of the applicants' constitutional qualifications to authorize the court to grant its license, then the diploma of the council of the University is, or should be, sufficient evidence of the applicants' qualifications and right to practice, without any other or further diploma from the court—and inconsistent; because the license or diploma of the court would be, or ought to be, substantially a certificate, that the applicant has the constitutional qualifications and right to practice; but how can the court give this certificate on the mere certificate or diploma of the council of . the University, which certificate or diploma of the council has been conferred on the mere certificate or recommendation of the faculty of law of the University, a body constituted or composed no doubt of individuals of great learning and discretion, but not appointed or appointable by, or deriving any authority from the court, and in no way controllable by, or responsible to the court.

Indeed, if the legislature had the constitutional right and power to constitute the faculty of law of the University a committee to ascertain, determine, and certify, to the constitutional qualifications of the applicants, and intended to do so by this act, why was the act so worded as to require or imply that an application for *admission* should be made to the court, and that the court should also grant a diploma or license? If the main purpose of the act was authorized by the constitution, why was the mere useless ceremony of an application for, and of the court's granting a license retained? What higher authority, or better evidence of his right to practice on taking the oath of office, could the applicant have or require, than the constitution, the act of the legislature, and the diploma specified in the act, and conferred on him, under the circumstances specified in the act? Is not the application for admission to, and the granting of a license by the court,

which this motion assumes to be required, and which probably is required or implied by the act, inconsistent with the main purpose of the act ?

2. We are inclined to think, that the proviso or condition of the act, which declares, that no diploma (of the council of the University) shall be sufficient for such admission, unless given for an attendance upon the law department of the University, with or without one year's study of the law elsewhere, for not less than certain terms or periods specified in the act, brings the act in conflict with the constitutional provision, and may in effect be considered as nullifying the act.

The constitution prescribes no term or period of clerkship, or of study; or standard of learning or ability; upon, or by which the applicant is to be examined, admitted, or rejected. On the contrary, it is plain, that the constitution intended to regulate and limit the power which the court then had over the admission of attorneys, &c., and to abolish the right and practice of requiring by certain prescribed rules and regulations a certain period of clerkship, or study of the law, as a preliminary or condition to the right of an examination for admission. The constitution says, " *any* male citizen of the age of twenty-one years, of good moral character, &c., *shall* be entitled," &c. If the applicant for admission is a citizen, and of the age and sex mentioned in the constitutional provision, the constitution in effect appoints him to the office of attorney, &c., upon his character, and the extent and sufficiency of his learning and ability, being ascertained and passed upon favorably. The constitutional provision would certainly appear to be inconsistent with any right of the legislature or of this court to impose upon the candidate for admission, the terms or conditions of attendance upon the law department of the University, specified in the act in question, or indeed, any prescribed course or term of study or preparation at the University, or elsewhere, as a condition of examination.

The act declares that the diploma conferred by the council of the University, *shall not* be sufficient evidence for the applicant's admission, unless given for a period of attendance upon the law department, &c., of not less than that specified in the act. Then conceding that the legislature had the constitutional right to declare, that the diploma of the council of the University should be sufficient evidence of the qualifications and right to admission of the law students of the University, why does not this unauthorized condition of a certain period of attendance upon its law department, imposed by the statute, whether for the benefit of the students, the profession, the professors, or the University, it is unnecessary now to inquire, completely nullify the act? The act would appear to present an instance of a legislative *felo de se*.

It is certainly quite clear if this proviso or condition does not destroy the act, and the legislature had the right to declare that the diplomas conferred by the council of the University, should be sufficient evidence, &c., that the applicants should be admitted on the presentation of their diplomas alone, and without requiring of them any evidence of a certain period of attendance upon the law department of the University, or of the study of the law elsewhere.

3. But the important question raised by this motion is, whether the convention which framed the constitution, did not intend, by the provision before quoted, to leave or vest in this court, the appointment of its attorneys and counsellors, and the strictly discretionary and *quasi* judicial power and corresponding duty, of ascertaining and passing upon the constitutional qualifications required for appointment to those offices implied in the right of appointment? This is the important question, because the legislature, if it has the right to confer this discretionary power on the faculty of law, or council of the University of New York, has the right to confer it on any committee, tribunal, per-

son or officer; and the legislature may not always exercise this right as discreetly as they have by the act in question.

We are inclined to think, from the express words of the provision of the constitution, that the intention of its framers was to leave or vest in this court the right of appointing its own attorneys and counsellors, and the right of ascertaining and passing upon the requisite qualifications of applicants, by and through its own committee of examination.

The words of the constitution are, "any male citizen of the age of twenty-one years, &c., of good moral character, and who possesses the requisite qualifications, &c., shall be entitled to *admission*, &c."

Shall be entitled to admission by whom? By whom but the court? What does the word *admit*, or do the words *to admit* mean? To grant leave, to enter into. Does not the right of granting leave, imply the right of refusal of leave; and do not the words of the constitution plainly imply that the court shall have this right; and does not this right or power of granting or refusing leave, imply, in the absence of any other express provision of the constitution on the subject, the right and duty of ascertaining and passing upon the qualifications of applicants for admission? If the words of the constitution had been, " shall be entitled to admission " *by the court or courts*, there could not have been a doubt, that the provision was intended to leave with the court, subject to the limitations or restrictions implied by the provision, the whole subject of the admission of its attorneys and counsellors, and the exclusive power and duty of passing upon their qualifications, and right of admission.

Suppose the constitution declared, that any stenographic reporter of the requisite qualifications, &c., should be entitled to enter the halls of the legislature for the purpose of reporting its proceedings. Would not such a declaration, or provision, imply and vest in the legislature the

*quasi* judicial power and discretion of passing upon the qualifications of every reporter who applied for admission, or leave to enter for such purpose ?

A brief reference to the circumstances under which the provision in question was inserted in the constitution, would appear to leave no room to doubt, that it was the intention to leave with the courts the power, discretion, and duty in question.

The constitution of 1777, (*Section* 27,) gave the appointment of attorneys, &c., to the courts, without any limitation. Under it, the court could admit minors or aliens; the court having and exercising indeed full discretion and power over the whole subject. (1 *John.*, 528; 4 *John.*, 192.)

The constitution of 1822 does not allude to the subject, nor indeed to the power or jurisdiction of the Supreme Court; simply speaking of it as a court already in existence. (*Art.* 5, *Sec.* 4.)

By the Revised Statutes, attorneys, &c., were defined to be, not only public officers, but judicial officers; and in the absence of any provision made for their appointment in the constitution of 1822, the Revised Statutes declared, that they should be appointed and licensed to practice by the several courts in which they intended to practice, and that the supreme court should prescribe the rules and regulations under which they should be appointed and licensed in that court. Previous to the Revised Statutes, they were considered and had been judicially held to be, not only officers of the court but public officers. (1 *Hopkins Ch. R.*, 6; 2 *Cowen*, 13.) Section 3 of article 6, of the constitution of 1846, declares and confirms the general jurisdiction of this court; and section 5 of the same article must operate, and was probably intended to operate, as a limitation of the powers of the legislature over its jurisdiction and proceedings; then follows in connection, the provision in section 8 of the same article, in relation

to the admission of attorneys and counsellors to practice. This provision of the constitution of 1846, must be presumed to have been adopted with knowledge of this power of the court, and of the rules and regulations which had been prescribed by it, and then in force under which it was exercised.

This provision of the constitution of 1846, should be looked upon as a mere limitation or regulation of a recognized and conceded power of the courts; and the principle which should control its construction is : that the mere limitation or regulation of a political or governmental power or trust by the sovereign power (for the convention which framed the constitution represented, and the people who ratified it were, and are the sovereign power, and not the legislature) should be considered, as leaving and confirming the power as thus limited or regulated in the tribunal or officer exercising and authorized to exercise such power, in the absence of any express declaration or provision of the sovereign power to the contrary, or inconsistent with such construction.

To adopt this principle in the construction of this provision of the constitution, would be merely recognizing and applying in its construction, the common law principle in the construction of a statute altering or modifying a common law rule, or impairing a recognized right, viz : that such statute is not to be deemed as intended to alter or modify the common law rule, or impair the right, any further than the express words of the statute demand.

If the legislature have the power assumed by passing the act in question, it must be under the general grant of legislative power in the constitution, or under the provision (*Article* 10, *Section* 2,) which expressly gives the legislature power to provide for the election or appointment of all officers, whose election or appointment is not provided for by the constitution, and all officers whose offices should thereafter be created by law.

When the constitution grants a power, or enjoins the performance of a duty, it is useless and nugatory for the legislature to do the same thing; for the constitution is supreme. The constitution and the act in question, both say, that certain applicants shall be admitted to practice as attorneys, &c. The constitution leaves nothing to be ascertained and passed upon judicially, but the qualifications of the applicants. It is very clear, therefore, that the act can have, and was not intended to have any other or further force or effect, than to confer on the faculty of law of the University the discretionary or judicial power of ascertaining and passing upon the qualifications of the applicants, and to make the diplomas of the council of the University, evidence of the sufficiency of their qualifications, instead of the license or diploma of the court.

Now it will hardly be claimed, that the legislature had the right to confer this power, under the general grant of the power of legislation. The general provision before adverted to (*Article* 10, *Section* 2,) giving express power to the legislature, to provide for the appointment or election of all officers whose appointment or election is not provided by the constitution, would go to show, that the right to pass the act could not be claimed under the general grant of legislative power. By the very terms of the provision in Article 10, § 2, it does not give the right, if the appointment of attorneys, &c., is provided for in section 8 of article 6.

We have given our reasons for thinking that the last mentioned section construed in connection with sections 3 and 5 of the same article, declaring and confirming the general jurisdiction of the court, and limiting the powers of the legislature over its jurisdiction and proceedings, do give to, or confirm in the court, the right of appointment and the exclusive power of ascertaining through a committee of its own, or otherwise, the qualifications of all applicants.

If we are right in our views of the question, it follows that the legislature had no power to pass the act in question.

If the power is in the court, it is a public trust; and the court has no right to surrender it, or the legislature to assume it, or confer it on any committee, person, or officer, constituted or appointed by it.

In this day of easy legislation, and of omnipotent majorities, it is the duty of this court to ward off all unauthorized attacks by the legislature on the legitimate powers or jurisdiction of the court.

We do not say that we have not the *power* to consider the diplomas conferred on the applicants under the act sufficient evidence of their qualifications, and to admit them on furnishing the evidence of citizenship, age, &c., required by the second rule of the court; or if thus admitted and licensed by the court, that their right to practice could be questioned on the ground of the unconstitutionality of the act.

An imperfect or improper exercise of a power of appointment, may not, in all cases, affect the appointee's title.

But we do intend to say, that, in our opinion, the legislature had no right to declare that the diplomas conferred under the act *shall* be sufficient evidence of the requisite learning and ability of the applicants, and *shall* entitle them to admission, either with or without the evidence of moral character, citizenship, and age, required by the second rule of the court; or with, or without evidence of their attendance in the University, and of their study of the law elsewhere, for the period or terms mentioned in the act; and that, in our judgment, they ought not to be admitted without submitting to the usual examination; which they, or such of them as desire it, can have at an early day, by complying with the second rule of the court.